## Joliet Railroad Co. v. John Barty.

1. STREET RAILWAYS—*Right of the Public to Use Car Tracks for Travel.*—Street cars have a right of way superior to the general travel at places other than crossings, to the extent that persons traveling by other means must give the right of way to moving cars; but the general public have the right to use and travel upon the entire street, including the car tracks therein, and are in no sense to be treated as trespassers for so doing.

2. EVIDENCE—*What is Sufficient to Sustain a Verdict Against a Street Railway in a Personal Injury Case.*—In an action against a street railway company for a personal injury, caused by a collision, the evidence showed that the driver of a wagon had reached the middle of the bridge when the street car was ninety feet from the end of the bridge; there was nothing to prevent the motorman from seeing the wagon, yet he came upon the bridge when it was likely that his action would cause a collision. *It was held,* that the evidence warranted a verdict for damages.

Trespass on the Case.—Personal injury. Appeal from the Circuit Court of Will County; the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the April term, 1901. Affirmed. Opinion filed July 12, 1901.

E. MEERS, attorney for appellant.

C. E. B. CUTLER and J. W. DOWNEY, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.
On January 2, 1899, appellant was operating an electric

motor street car line in the city of Joliet. At about three o'clock in the afternoon of that day, appellee was driving a team of horses, attached to a farm wagon, crossing what is known as the Second Avenue bridge, over Hickory Creek, in said city. There was a hay rack upon the wagon sixteen feet long and eight feet wide loaded with corn stalks tied in bundles. The load was five or six feet high and the ends of the bundles, which were laid cross-wise on the wagon, extended about two feet on each side of the rack. Along the center of the bridge, appellant had a single track, the north rail of which was eleven feet nine inches from a gas pipe running along the north side of the bridge next to the iron superstructure. The body of the street car, when on this track, extended about one and one-half feet beyond the rail, thus leaving a clear space between the gas pipe and the body of a passing car of ten feet and three inches. Appellee, who was driving west, saw a car of appellant a block and a half or two blocks west of the bridge, as he drove upon the same. He drove on the north side of the street car track and about the time he had reached the middle of the bridge, saw that the car had stopped at the east line of Iowa Avenue, about ninety feet west of the bridge. Appellant hurried his team to get out of the way; the car, however, at once started up again and came upon the bridge before appellant could get off, passing him about ten feet from the west end thereof. As the car passed, several bundles of corn stalks fell from the load, appellee was thrown off of the front of the wagon behind the horses, the right line parted and the right hind wheel of the wagon passed over his leg breaking both bones. He was removed to a hospital where he remained under treatment two or three months. For six months after he left the hospital he was unable to walk except by the aid of crutches. On September 8, 1899, he brought this suit against appellant to recover damages for the injuries so received by him.

The declaration contains three counts. The first alleges that the street car struck appellee's wagon with force and violence, causing him to be thrown therefrom; the second,

that the street car crowded and forced appellee's horses and wagon against the side of the bridge, causing the wagon to move and tip, thereby causing him to be thrown to the ground; the third, that appellee's horses were frightened by the cars, so that he was unable to control them, and that the accident was caused thereby. In each count appellee is alleged to have been in the exercise of due care and diligence and the accident is averred to have been caused by the negligence of appellant's servants in charge of the car. The general issue was pleaded by appellant and upon the trial the jury returned a verdict in favor of appellee for $650. A motion for a new trial was overruled and judgment entered for the amount of the verdict.

The sole reason urged by appellant for the reversal of the judgment in this case is, that the verdict of the jury was not warranted by the evidence. That the plaintiff received severe injuries, and that such injuries were caused by his fall from the wagon at the time the street car passed him, is unquestioned. Four witnesses swore as to the question of the collision between the car and appellee's wagon or the load thereon. Appellee and the seventeen-year-old son of his employer, who was riding with him on the wagon at the time of the accident, swore that there was a collision between the car and the load upon the wagon. On the other hand Hartwig, the motorman in charge of the car, and another witness, who claims to have been watching the car from a window over a store near the west end of the bridge, swore that the car did not strike either the wagon or its load. From the undisputed testimony as to the width of the load and the space between the car and the north side of the bridge, it would appear to have been a physical impossibility for the car to have passed the wagon without striking its load. It is undisputed that several bundles of corn stalks fell from the wagon at the time the car passed, which tends to corroborate the testimony of appellee and his companion, that they were knocked or pushed off the load by the car.

Appellant insists that in the ordinary operation of its

road it had a right superior to that of appellee to the use of that part of the street occupied by its tracks. The rule as to the relative right of street car companies and the general public to the use of streets, is stated in North Chicago Street Ry. Co. v. Smadraff, 189 Ill. 155, as follows:

"Although street cars have a superior right of way to the general travel on streets at places other than crossings, to the extent that those traveling by other means must get off the track and give the right of way to the moving cars, for the reason that they can get off the track, whereas the cars can not, still the general public have the right to use and travel upon the street including that portion of it on which the car tracks are laid, and are in no sense to be treated as trespassers for so doing."

In this case appellee went upon the bridge before the street car. He had, indeed, reached the middle of the bridge when the street car was still some ninety feet from the west end of it. There was nothing, so far as the evidence shows, to prevent the motorman from seeing appellee's wagon and yet he came on the bridge when it must have been evident to him that his action would at least, very likely, cause a collision. It was impossible for appellee to get out of the way and he appears to have done all that any reasonably prudent man would have done under the circumstances to have prevented the accident. The evidence was amply sufficient to warrant the jury in finding as they did, and we find in the record no reason why the verdict and the judgment rendered thereon, should not be sustained.

The judgment of the court below is accordingly affirmed.

Mr. Presiding Justice DIBELL, having presided at the trial of this case in the court below, took no part in its determination in this court.