Mary E. McMahon, Appellee, *vs.* The Chicago City Railway Company, Appellant.

*Opinion filed April 23, 1909.*

1. Carriers—*a carrier is bound to protect passenger from violence by its servants.* While a common carrier is not an insurer against all possible injuries a passenger may receive while on its cars, yet it is bound to protect its passengers from violence and insults, not only of co-passengers but of its own servants.

2. Evidence—*inquiry where declarations are offered as part of the res gestæ.* Where declarations are offered as part of the *res gestæ,* the true inquiry is whether they constitute a verbal act illustrating, explaining or interpreting other parts of the transaction of which it is itself a part, or whether they are merely a history of a completed past event.

3. Same—*what is admissible as part of res gestæ.* In an action against a street car company by a passenger injured by being knocked down by the conductor's elbow as he was struggling to free himself from the grasp of other passengers to make an assault upon the plaintiff's husband, evidence of the dispute between the conductor and the husband and the conversations giving rise to the attempted assault are admissible as part of the *res gestæ.*

4. Trial—*correct practice where answer is not responsive to question.* Where an answer given by a witness is not responsive to the question asked, the proper practice is to move to exclude the answer on that ground; and if no such motion is made, the objection that the answer was not a part of the *res gestæ* cannot be urged on appeal.

5. Same—*when error in admitting evidence is cured by remittitur.* Error in admitting evidence as to the amount of the plain-

tiff's physician's bill is cured by a *remittitur* from the verdict of the amount of such bill, as shown by the incompetent testimony. (*McCarthy* v. *Spring Valley Coal Co.* 232 Ill. 473, and *Jones & Adams Co.* v. *George*, 227 id. 64, distinguished.)

6. Same—*when cross-examination of physician is not harmful.* Permitting plaintiff's counsel in a personal injury case against a street railway company to ask defendant's expert medical witness how many cases he had testified in as an expert for the street car lines in Chicago is harmless, even though such question should have been limited to the number of times he had testified for the defendant company, where his answer showed that he had testified sometimes for the plaintiffs and not the railway companies.

7. Instructions—*giving substantial duplicates of instructions is not reversible error.* While it is not error to refuse to give instructions which are duplicates of or substantially identical with instructions already given, it is not reversible error to give them where the instructions themselves are not objectionable.

8. Same—*when refusal of an instruction as to ordinary care is proper.* In an action by a passenger for injuries received in being knocked down by the elbow of defendant's servant who was attempting to strike her husband, an instruction that the jury should not find for the plaintiff if they believed she could have avoided the injury by the use of ordinary care is properly refused as misleading, where its only basis is the argument that if she had kept to her seat during the scuffle she would not have been hurt.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. A. H. Chetlain, Judge, presiding.

Samuel S. Page, and Watson J. Ferry, (John R. Harrington, of counsel,) for appellant:

Evidence is admissible as a part of the *res gestæ* only where the statements made are a part of the transaction in question. When made before or after, however closely related in point of time, they are incompetent. *Railway Co.* v. *Fillmore*, 57 Ill. 265; *Railway Co.* v. *Becker*, 128 id. 545; *Pennsylvania Co.* v. *McCaffrey*, 173 id. 169; *Railway Co.* v. *Uhter*, 212 id. 174.

In seeking to make out appellee's case and to establish her allegation that she was compelled to, and did, pay out

money in and about being cured of her injury, it was not sufficient for her to prove merely that she had paid a certain physician's bill, but she was required also to show that by reason of her injury she had necessarily incurred such bill and that it was reasonable. Black on Accident Cases, sec. 230, and authorities cited; Sutherland on Damages, 720, and authorities cited; *Railway Co.* v. *Cotton,* 140 Ill. 486; *Railway Co.* v. *Cook,* 145 id. 551; *Schmitt* v. *Kurrus,* 234 id. 578.

Notwithstanding the fact that the jury rendered a verdict against appellant, it was nevertheless entitled to have that verdict based upon proper, relevant and competent evidence. *Jones & Adams Co.* v. *George,* 227 Ill. 64; *McCarthy* v. *Coal Co.* 232 id. 473.

Where there has been misconduct or error plainly apparent in the record, the burden is on the successful party to establish the fact that such misconduct or error was harmless, and when it affirmatively appears that there was harm the whole finding will be set aside. *Railroad Co.* v. *Billings,* 212 Ill. 37.

If error is shown to exist it will compel a reversal, unless the record affirmatively shows the error was not prejudicial. *Crane* v. *Hogan,* 228 Ill. 338.

It was error to permit counsel for appellee to ask one of appellant's expert witnesses in how many cases he had testified as an expert for other street car lines. *Railway Co.* v. *Smith,* 226 Ill. 178; *Railroad Co.* v. *Schmitz,* 211 id. 446.

It was error to submit to the jury instructions which repeated the same propositions, because such procedure had the tendency to unduly emphasize appellee's claim. *North American Restaurant* v. *McElligott,* 227 Ill. 317; 1 Brickwood's Sackett on Instructions, sec. 186; *Keeler* v. *Stuppe,* .86 Ill. 309; *Clark* v. *People,* 224 id. 554.

If the injury to appellee would not have happened had she been in the exercise of ordinary care for her safety she was not entitled to recover even though appellant was neg-

ligent, there being no claim of willful or wanton injury. *Cullen* v. *Higgins,* 216 Ill. 78; *Steel Co.* v. *Martin,* 115 id. 358; *Mallen* v. *Waldowski,* 203 id. 87.

Cunningham & Cunningham, for appellee:

A common carrier guarantees that its employees will not assault or injure its passengers. *Goddard* v. *Railroad Co.* 57 Me. 202; *Railroad Co.* v. *Flexman,* 103 Ill. 546; *Packet Co.* v. *True,* 88 id. 608.

Mr. Justice Carter delivered the opinion of the court:

This is an action on the case to recover damages for personal injuries alleged to have been sustained by appellee while a passenger on one of appellant's electric street railway cars in Halsted street, near Forty-eighth, in the city of Chicago. On a jury trial in the superior court of Cook county appellee recovered a judgment April 20, 1907, for $1850, from which amount the plaintiff remitted $200, on a suggestion of the trial judge that he did not regard the proof as to the services of the physician, amounting to $200, sufficient. The judgment was affirmed by the Appellate Court and the case has been appealed to this court.

Sunday afternoon, August 23, 1903, appellee and her husband were passengers on a street car in Chicago operated by appellant. They had transfers from another line of the same company entitling them to ride. A dispute arose between the husband and the conductor of the car concerning further transfers, which lasted for some time, the testimony showing that the conductor renewed the controversy several times as he passed by them in the car, and also showing, without contradiction, that the conductor addressed vituperative, profane and obscene language to them, and that the altercation finally culminated in a scuffle between the conductor and the husband; that the conductor started the scuffle by attempting to strike the husband; that when he was struggling in the grasp of some of the pas-

239—22

sengers who were trying to prevent him from making a physical assault on the husband, his arm or elbow struck appellee and knocked her against the corner of the seat, and afterwards in the melee she was thrown over and seriously injured. At the time the conductor attempted to strike the husband appellee was sitting across the aisle from her husband. No attempt was made by appellant to contradict the main features of the evidence as to what started the affair or that appellee was injured thereby. The conductor and motorman did not testify. Appellant, by cross-examining witnesses of appellee and by the introduction of other testimony, endeavored, however, to show that the injury was not as serious as contended.

Appellant was a common carrier of passengers, and while not an insurer against any possible injury that passengers might receive while on its cars, it was bound not only to protect them from the violence and insults of strangers and co-passengers, but also from the violence and insults of its own servants. (*Chicago and Eastern Railroad Co. v. Flexman,* 103 Ill. 546.) "The carrier's obligation is to carry his passenger safely and properly and to treat him respectfully, and if he entrusts the performance of this duty to his servants the law holds him responsible for the manner in which they execute the trust. The law seems to be now well settled that the carrier is obliged to protect his passenger from violence and insult, from whatever source arising. * * * If this duty to the passenger is not performed, if this protection is not furnished, but, on the contrary, the passenger is assaulted and insulted through the negligence or the willful misconduct of the carrier's servant, the carrier is necessarily responsible." *Goddard* v. *Grand Trunk Railway Co.* 57 Me. 202; see, also, *Craker* v. *Chicago and Northwestern Railway Co.* 36 Wis. 657; *Nieto* v. *Clark,* 1 Clifford, 145.

Counsel for appellant do not seriously question that this is the measure of responsibility cast upon common carriers.

They do, however, contend that the court committed such error on the trial as to require a reversal of this judgment. They first contend that the dispute and conversation over the transfers was not a part of the *res gestæ* and was improperly admitted in evidence. The *res gestæ* have been defined as "those circumstances which are the undesigned incidents of a particular litigated act and which are admissible when illustrative of such act." (1 Wharton on Evidence, sec. 259.) The "ground for the admissibility of such declarations is that they are the natural and spontaneous utterance of the declarant, so closely connected with the transaction in question as to be, in effect, a part of it, there having been no opportunity for premeditation or design." (1 Elliott on Evidence, sec. 538.) A narrative of past events cannot be introduced as a part of the *res gestæ*. Continousness, however, is not always to be measured by time. A transaction in which the parties are absorbed may last for weeks, so as to make what is said and done in connection with it part of the *res gestæ*. (1 Wharton on Evidence, sec. 261.) This court has said that the true inquiry, according to all authorities, is whether the declaration is a verbal act, illustrating, explaining or interpreting other parts of the transaction of which itself is a part, or is merely a history or part of the history of a completed past affair. (*Chicago West Division Railway Co.* v. *Becker,* 128 Ill. 545; *Montag* v. *People,* 141 id. 75; *Pennsylvania Co.* v. *McCaffrey,* 173 id. 169; *Lander* v. *People,* 104 id. 248.) The conversations between the conductor, appellee and the husband were contemporaneous with the main fact,—that is, the injury,—and were properly admitted as a part of the *res gestæ*.

The trouble with the conductor resulted in appellee, her husband and a friend leaving the car immediately after the appellee was injured. This friend, Kelly, testified that after leaving the car he "invited the conductor off the car." Counsel insist that this statement is not a part of the *res*

*gestæ.* It was made in response to a question asked by appellee's counsel as to what the conductor said to them as they left the car. It was not responsive to that question, and, while the question was objected to, no motion was made to exclude the answer. For that reason, even if Kelly's remarks were not a part of the *res gestæ,* the point, not having been properly preserved, cannot be raised here.

The further contention is made that the *remittitur* of $200 by the trial court did not remedy the error arising from the improper admission of the testimony with reference to the physician's bill. Counsel rely upon *Jones & Adams Co.* v. *George,* 227 Ill. 64, and *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473, to support their contention. Those cases are clearly distinguishable. In those cases there was no possibility of showing to what extent the jury had been improperly influenced by the evidence in question in the first or by the improper remarks of counsel in the second, but the improper testimony in this case had to do only with the amount of the physician's bill, which he stated was $200. This amount was remitted. Manifestly, the verdict could not have been more than $200 larger because of this testimony. The error, therefore, if any, was not prejudicial to appellant.

The further contention is made that the court improperly refused to allow appellee, on cross-examination, to answer this question in reference to a card game: "Instead of being in the church wasn't it just the other way?—that the church got after you for running a game there and had you up for that?" Counsel argue that they were trying to show by this question that appellee was out evenings and directly engaged in occupations that indicated she was not as seriously hurt as she claimed. The bearing on this case of a dispute she might have had with her church as to card playing cannot readily be seen. We think the court properly sustained the objection to the question.

Appellant further contends that the court improperly permitted one of its expert witnesses, Dr. Leaming, to be cross-examined as to how many cases he had testified in as an expert for the street car lines of Chicago. The extent of an examination along this line is largely within the discretion of the trial court. (*Shaughnessy* v. *Holt,* 236 Ill. 485.) No definite limit can be prescribed as a rule of law. (8 Ency. of Pl. & Pr. p. 768.) The weight to be accorded to the opinion of an expert witness depends largely upon his means of information and knowledge, as well as his bias and inclination or relation to the parties. It is always competent to show the interest of the witness. (*Kerfoot* v. *City of Chicago,* 195 Ill. 229.) We think, however, that the question should have been limited to the number of times the witness had testified for appellant. (*Chicago and Eastern Illinois Railroad Co.* v. *Schmitz,* 211 Ill. 446; *Chicago City Railway Co.* v. *Smith,* 226 id. 178.) The witness had already answered, without objection, that he had testified in some fifteen cases as an expert in the preceding three months. This question sought to show in how many of these cases he had testified for street railway companies, and he answered ten; that in some of the fifteen cases he testified for the plaintiff and not for the defendant. Counsel for appellee was seeking to show by the cross-examination that the doctor always testified for defendant corporations. His answers showed the contrary, and hence could not have been hurtful to appellant.

One of the appellee's witnesses (Mrs. O'Connor) was asked, "Well, do you know of your own knowledge of any trouble she has had affecting her kidneys?" An objection to this question on the ground that no proper foundation had been laid was overruled, and her answer was, "Not before; I never heard of anything." The answer was not responsive to the question, but no motion was made to strike it out on that account. However, the objection is

now made that the answer was hearsay. Mrs. O'Connor was cross-examined at great length, and her testimony shows that she was testifying from her own knowledge and not from hearsay. While the answer might properly have been stricken out as not responsive, no such motion was made, and appellant is not now in a position to complain.

The appellant further insists that the court committed reversible error in giving several instructions for appellee that were duplicates or substantially identical with other instructions given for appellee. The court should have refused the instructions in question. (*North American Restaurant* v. *McElligott,* 227 Ill. 317.) These duplicate instructions were evidently given inadvertently by the court, but we cannot see how they prejudiced appellant.

The further contention is made that the court improperly refused instruction 34 for appellant, which stated, in substance, that the jury should not find for plaintiff if they believed she could have avoided the injury by the exercise of ordinary, reasonable care. The only basis for this instruction is the argument of counsel that appellee should have kept her seat during the scuffle and then she would not have been injured. With this theory of the duty of appellee we cannot agree. We think such an instruction would have tended to mislead the jury, and was properly refused.

The refusal of an instruction with reference to an operation advised by appellee's physician was proper. It did not state a correct principle of law, and, in any event, was objectionable, as it did not apply to the evidence in the case but referred to a proposed operation for a trouble which antedated the injury here in question.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*